OLMSTEAD v ANDERSON

Docket No. 78497. Submitted May 21, 1985, at Marquette.—Decided
August 20, 1985. Leave to appeal applied for.

Henry Stier Iler and Mary Lou Iler, both residents of Minnesota,
and Maureen Briggs, a resident of Wisconsin, were killed in an
automobile accident which occurred in Wisconsin when their
vehicle was struck by a vehicle owned and driven by Robin
Brzoznowski, a Michigan resident. Brzoznowski was also killed
in the collision. Plaintiff, Becky Jill Olmstead, administrator of
the estates of the Ilers, brought an action in Minnesota against
Reino Anderson, a Michigan resident and administrator of the
estate of Brzoznowski. The Minnesota court held that venue
was not properly in Minnesota. Plaintiff thereafter brought the
present action in Michigan, seeking a declaratory judgment as
to whether Michigan or Wisconsin law applied to the issues
involved. The Iron Circuit Court, John D. Payant, J., held that
the law of the State of Wisconsin should apply under the
doctrine of *lex loci delicti.* Plaintiff appealed, claiming that the
law of Michigan should apply. *Held:*

The doctrine of *lex loci delicti* is no longer to be applied
mechanically in any case which arises out of a wrong done in a
foreign jurisdiction. In any tort action brought in Michigan, the
law of Michigan is to be applied unless the court determines
that a superior foreign state interest exists which calls for the
application of foreign law in order to reach a just resolution of
the controversy. In this case, there are several interests in
favor of having Michigan law govern the case, and no discerna-
ble interests of Wisconsin. The trial court erred in determining
that Wisconsin law should apply.

Reversed.

Torts — *Lex Loci Delicti* — Venue.

The rule of *lex loci delicti* is not to be applied mechanically in the
case of an action in which the situs of the wrong was in

References for Points in Headnote
Am Jur 2d, Venue §§ 15-19.
Modern status of rule that substantive rights of parties to a tort
action are governed by the law of the place of the wrong. 29
ALR3rd 603.

another state; in any tort action commenced in Michigan the law of Michigan is to be applied unless the court determines that a superior foreign state interest exists which calls for the application of foreign law in order to reach a just resolution of the controversy.

*Fisher, Omdahl & Tousignant* (by *Steven J. Tinti),* for plaintiff.

*Lori & Schwedler, P.C.* (by *David J. Lori),* for defendant.

Before: Cynar, P.J., and Hood and R. L. Olzark,* JJ.

Per Curiam. Plaintiff appeals by leave granted from an order of the Iron County Circuit Court which determined that the law of the State of Wisconsin would apply to the substantive issues in this litigation.

The litigation arose out of a fatal automobile collision which occurred on September 3, 1982, in Catawba Township, Wisconsin. Plaintiff's decedents, Henry Stier Iler and Mary Lou Iler, who were both Minnesota residents, were driving to northern Michigan via Wisconsin. Maureen Briggs was a passenger in the Iler vehicle.[1] She was a Wisconsin resident. They were hit head-on by an automobile owned and operated by defendant's decedent, Robin Brzoznowski. Robin Brzoznowski was a resident of Michigan, where his vehicle was also registered and insured. All four persons died in the collision.

Plaintiff, the daughter of the Ilers, was appointed administrator of their estates by a Minne-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The file reflects that the claim of the Wisconsin resident was settled on May 18, 1984. Therefore, except as to the situs of the collision, Wisconsin has no connection with this litigation or the substantive rights of the parties.

sota probate court, and attempted to bring suit against Brozoznowski's estate in Minnesota. She was rebuffed, however, the Minnesota court holding that the only relationship Brzoznowski had with that state was that his insurance was issued by United States Fidelity and Guarantee Company, which did business in Minnesota. The court held that Minnesota venue was improper.

Plaintiff then instituted the instant action against defendant, a Michigan resident, who had been appointed administrator of Brozoznowski's estate.

Faced with three possible choices of law, Minnesota, Wisconsin or Michigan, plaintiff filed a motion for declaratory judgment pursuant to GCR 1963, 521 (now MCR 2.605) as to whether Michigan or Wisconsin law was applicable to the substantive issues raised in the litigation between plaintiff and defendant. After a hearing, the trial court held that under the circumstances of the case, the doctrine of *lex loci delicti* required that Wisconsin law be applied to the substantive issues. The doctrine of *lex loci delicti* provides that the law of the place of the wrong governs the cause of action. Plaintiff claims that the law of Michigan, *lex fori,* the law of the forum, should apply.

The choice of law question is of significance to both parties as neither Michigan nor Minnesota have relevant limits on the award of damages in a wrongful death action, while Wisconsin has a limitation of $25,000.[2]

Michigan applied the doctrine of *lex loci delicti* at least as early as 1894, *Wingert v Wayne Circuit Judge,* 101 Mich 395; 59 NW 662 (1894), and for decades thereafter. In *Abendschein v Farrell,* 382

---

[2] It is noted that both the other states involved in this occurrence have long since abandoned the doctrine of *lex loci delicti. Wilcox v Wilcox,* 26 Wis 2d 617, 621; 133 NW2d 408 (1965); *Balts v Balts,* 273 Minn 419, 424-426; 142 NW2d 66, 70 (1966).

Mich 510; 170 NW2d 137 (1969),[3] a unanimous Michigan Supreme Court declined an invitation to take a more "modern" approach and move the jurisprudence of this state away from the rule of *lex loci delicti,* stating:

"That rule has been settled unanimously, understood thoroughly, and thought to be as fair to all affected thereby as man might reasonable conceive unless, of course, we are to make equity causes out of law actions. In a word, the law applicable to the present reviewed question is the rule *stare decisis,* a rule all of us are supposed to follow save only when persuasion leads to abiding conviction that some undeniable better rule is available for proper supersession. There is no such persuasion, since the quagmire of unanswered and perceivable unanswerable questions arising out of the proposed new doctrine appears less attractive than our admittedly hard and fast—and occasionally unjust, it is true—rule that the law of the place of the wrong is applied when the forum is a Michigan court." *Abendschein, supra,* p 516.

Thirteen years later, however, in *Sexton v Ryder Truck Rental, Inc,* 413 Mich 406; 320 NW2d 843 (1982), the Court re-examined the question of whether adherence to *lex loci delicti* should continue. The Court noted that, despite the reputed advantages of the *lex loci* rule, "modern scholars and about half or more of the states have rejected its rigidity since the rule often produced obvious rather than just results through its failure to consider the interests of other jurisdictions in the litigated matter". *Sexton, supra,* p 421-423. The *Sexton* Court retreated significantly from the *lex*

---

[3] *Abendschein v Farrell, supra,* is similar to the instant case in that it involved three jurisdictions. There the defendant owner and the defendant driver were both Michigan residents and the vehicle involved was licensed in Michigan. Plaintiffs were residents of New York, and the collision occurred in Ontario during a trip from Buffalo, N. Y., to Detroit, Michigan.

*loci* doctrine and pointed out that slavish devotion to the rigidity of that doctrine is no longer the reasonable policy to follow or the generally accepted law in the United States. The *Sexton* Court concluded that the trial court's grants of summary judgment based on *lex loci delicti* were in error.

Since none of the opinions in *Sexton* garnered a majority of the justices, however, no clear "rule" for choice of law in tort cases was ascertainable from that decision. This Court, in the subsequent case of *Smith v Pierpont,* 123 Mich App 33, 36-38; 333 NW2d 165 (1983), recognized this fact in analyzing the *Sexton,* holding:

"Three distinct attitudes toward the doctrine emerged in *Sexton,* none of which garnered a majority of the justices. Justice WILLIAMS, with Justices LEVIN and MOODY concuring, would hold that when two residents, or two corporations doing business in the state, or any combination thereof, are involved in an accident in another state, the forum would apply its own law. *Sexton,* p 413. Justice KAVANAGH, with Justices LEVIN and FITZGERALD concurring, would hold that the *lex fori* would govern, *absent a reason for applying the law of another state.* Justice LEVIN wrote separately, noting that while he concurred with both opinions previously referred to, he favored that chosen by Justice KAVANAGH. Sexton, p 442. Justice RYAN dissented, joined by Chief Justice COLEMAN, and indicated that he would adhere to the traditional *lex loci delicti* analysis articulated in *Abendschein, supra, Sexton, supra,* p 443.

"Thus, despite the absence of a majority position, it appears that a majority of the justices are no longer willing to apply the substantive law of another state merely because that state was the situs of the wrong at issue. In finding that the *lex loci delicti* rule may no longer be justified in terms of its original rationale, Justice WILLIAMS noted in *Sexton, supra,* pp 421-423:

" 'The traditional advantages advanced on behalf of the *lex loci* rule have included discouraging forum shopping and furthering the goals of certainty and

predictability through its ease of application, thus simplifying the task of both lawyers and the courts.

" 'Despite these reputed advantages, modern scholars and about half or more of the states have rejected its rigidity since the rule often produced obvious rather than just results through its failure to consider the interests of other jurisdictions in the litigated matter.' (Footnotes omitted).

"We agree that the *lex loci delicti* rule should no longer be mechanically applied. Ease of administration and predictability should not alone justify results which are arbitrary or unfair and which do not reflect the interests of the forum state. Such injustice is most pronounced where, as here, the parties to the lawsuit are Michigan residents. In this case, the economic consequences of the tort will be felt most strongly in the forum state rather than in the state of the injury. In addition, the virtue of uniformity that the rule allegedly provides has been severely undercut by the frequent departures from the rule made by our courts.

"Lastly, we agree with the *Sexton Court's* rationale concering the forum shopping argument made in favor of the docturine. The Court stated:

"The other argument in favor of *lex loci delicti,* avoidance of forum shopping, is not a strong argument as against citizens of the forum state who presumable have every reason of convenience and economy to be entitled to service in their own state. To this, of course, can be added the fact that the forum state generally has an interest in seeing that its injured citizens are well-served and that its citizen defendants are afforded every protection that such citizens would have in their own state. Additionaly, where both the plaintiff and the defendant are citizens of the forum state, the state where the wrong took place will normally have no interest in the litigation.' *Sexton, supra,* pp 432-433.

"In light of the foregoing analysis, we conclude that the *lex loci delicti* rule should be modified, and we favor the approach advanced by Justice KAVANAGH in his concurring opinion in *Sexton, supra,* and embraced in Justice LEVIN's separate concurrence. *We hold that, in a tort action commenced in this state, the law of this state is to be applied unless the court determines that a*

*superior foreign state interest exists which calls for the application of the foreign law in order to reach a just resolution of the controversy.* We think the presumption of *lex fori* is a logical and reasonable approach in that the fact that a Michigan court can obtain jurisdiction over the parties involved generally corresponds with a substantial level of state interest in the outcome of the litigation. However, the state which is the situs of the injury is entitled to a consideration of any disproportionate interest it may have in the controversy in order to avoid any injustice resulting from the application of *lex fori.*

"In applying these principles to the instant case, we conclude that the substantive law of Michigan should control. All parties are residents of Michigan, and a state has a significant interest in applying its own substantive law to its citizens. On the other hand, we find no superior Wisconsin interest in having its substantive law applied, especially since the injury did not affect any Wisconsin residents or property." (Emphasis added.)

In *Vogh v American International Rent-a-Car, Inc,* 134 Mich App 362; 350 NW2d 882 (1984), we followed the aforementioned language and noted that where all parties are Michigan residents the courts will apply Michigan law. Michigan has a strong interest in applying its law to a case concerning only its residents. Where either a plaintiff or a defendant is not a Michigan resident nor doing business in Michigan, courts have looked to the interests of each jurisdiction in having its law govern the case. See, *General Motors Corp v National Auto Radiator Mfg Co, Ltd,* 694 F2d 1060 (CA 6, 1982), and *Bennett v Enstrom Helicopter Corp (On Rehearing),* 686 F2d 406 (CA 6, 1982), *cert den* 459 US 1210; 103 S Ct 1202; 75 L Ed 2D 444 (1983).

The move away from the doctrine of *lex loci delicti* cannot reasonable or logically be restricted

only to those cases where all parties concerned are residents of Michigan. The fact that one of the parties is not a Michigan resident does not preclude the use of the doctrine which calls for the law of the forum to apply presumptively. In such cases, a comparison of the interests of each jurisdiction in having its laws govern the case is warranted.[4]

We adopt the holding of *Smith v Pierpoint* as a general proposition of law, not limited to cases in which all the parties are Michigan residents; *i.e.,* in any tort action commenced in this state, the law of this state is to be applied unless the court determines that a superior foreign state interest exists which calls for the application of foreign law in order to reach a just resolution of the controversy.

Applying that proposition of law to the instant case, we conclude that Michigan law should be applied to the substantive issues and that the trial court erred reversibly in concluding that Wisconsin law should apply.

This case involves a Minnesota plaintiff and a Michigan defendant and a Wisconsin injury. Under the law of either Minnesota or Michigan, substantial recovery in a wrongful death action is possible.

While one of the parties is not a Michigan resident, a comparison of the interests between Wisconsin and Michigan indicates that the interests of Michigan in having its law govern the case outweigh any interest of Wisconsin. The vehicle driven by defendant's decedent, Brzoznowski, was owned and registered in Michigan. The insurance policy covering the vehicle was written in Michigan by an insurance company doing business in

---

[4] See Sedler, *Choice of Law in Michigan; A Time to Go Modern,* 24 Wayne L Rev 829, 835-836 (1978).

this state. Thus, the insurer was on fair notice of the possible liability under that policy and there would be no unfairness in requiring the insurer to defend and possible pay an unlimited recovery in Michigan. We can discern no interests of Wisconsin whatsoever in the instant matter. On the other hand, Michigan has an avowed interest in favor or wrongful death actions resulting in full shifting of losses from those not at fault to those at fault. This is evident by the lack of a monetary limit on the recovery for the loss of society and companionship. Michigan's interest is particularly strong in regard to automobile accidents in light of Michigan's no-fault threshhold scheme, MCL 500.3135; MSA 24.13135, in which only in a case of death or serious bodily injury or disfigurement does tort liability survive at all.

Reversed.