OLMSTEAD v ANDERSON

Docket No. 77271. Argued November 13, 1986 (Calendar No. 12).
Decided February 6, 1987.

Becky J. Olmstead, as administratrix of the estates of Henry S.
Iler and Mary Lou Iler, deceased, brought an action in the Iron
Circuit Court against Reino Anderson, administrator of the
estate of Robin Brzoznowski, deceased, for the wrongful death
of the Ilers, and seeking a declaration regarding whether the
laws of Minnesota, Wisconsin, or Michigan would govern. The
Ilers were residents of Minnesota at the time they were fatally
injured while driving in Wisconsin in an accident involving
Brzoznowski, a Michigan resident. The court, John D. Payant,
J., held that the law of Wisconsin, the place where the accident
occurred, governed. The Court of Appeals, CYNAR, P.J., and
HOOD and OLZARK, JJ., reversed in an opinion per curiam,
finding no unfairness to the parties in applying Michigan law,
an avowed interest on the part of Michigan in wrongful death
actions in the full shifting of losses to the parties at fault, and
no interest on the part of Wisconsin in applying its law (Docket
No. 78497). The defendant appeals.

In an opinion by Chief Justice RILEY, joined by Justices
LEVIN, BRICKLEY, CAVANAGH, BOYLE, and ARCHER, the Supreme
Court *held*:

Because no unfairness to the parties will result if Michigan
law is applied and Wisconsin has no interest in having its law
govern, there is no rational reason in this case to displace
Michigan law.

1. Where an action in tort has presented a conflict of laws,
courts have looked to the law of the place of the wrong (lex loci
delicti) or the law of the forum in which the action is brought
(lex fori) or to the significance of contacts the parties may have

REFERENCES

Am Jur 2d, Conflict of Laws §§ 5, 98-106, 118.

Comparative negligence: choice of law as to application of compara-
tive negligence doctrine. 86 ALR3d 1206.

Modern status of rule that substantive rights of parties to a tort
action are governed by the law of the place of the wrong. 29
ALR3d 603.

had with a particular jurisdiction in determining which law to apply. Traditionally, application of the law of the place of the wrong was favored because of perceived advantages of certainty, predictability, ease of application, and discouragement of forum shopping. Often, the advantages, true in theory, were illusory in practice, and courts began to look to the public policy of the forum or to characterize the issues as procedural, rather than substantive, to avoid applying the law of the place of the wrong.

2. As Michigan case law developed, although the substantive rights of parties in conflict cases purportedly were governed by the law of the place of the wrong, the doctrine was neither generally followed nor consistently applied. The use of escape devices to avoid application eroded predictability and certainty of results. Subsequently, in *Sexton v Ryder Truck Rental, Inc,* 413 Mich 406 (1982), lex loci delicti was abandoned as an absolute rule. No specific methodology was adopted, however, requiring each case to be evaluated in the light of its circumstances.

3. In this case, the law of the state of domicile of each of the parties' decedents allows recovery of unlimited damages in wrongful death actions; only the law of the place of the accident does not. The automobiles involved were registered, licensed, and insured in the domicile states, and the parties' decedents and their insurers were on notice regarding potential unlimited liability. Application of Michigan law, therefore, would not result in unfairness. As in *Sexton,* neither party is a citizen of the state in which the wrongs occurred, and thus that state has no interest in applying its limitation of damage provision, the issue involving not conduct, but compensation of survivors. The choice by the plaintiff to bring this action in Michigan against a Michigan defendant was legitimate and did not involve forum shopping. In light of the circumstances, there is no rational reason to displace Michigan law.

Affirmed.

Justice GRIFFIN took no part in the decision of this case.

145 Mich App 160; 377 NW2d 853 (1985) affirmed.

CONFLICT OF LAWS — WRONGFUL DEATH — LEX LOCI DELICTI — LEX FORI.

In an action for wrongful death, resulting from an automobile accident in Wisconsin and involving a Minnesota plaintiff and a Michigan defendant, no rational reason to displace Michigan law was shown where Wisconsin had no interest in having its law govern and no unfairness to the parties would result from the application of Michigan law.

*Fisher, Omdahl & Tousignant* (by *Torger G. Omdahl*) for the plaintiff.

*Lori & Schwedler, P.C.* (by *David J. Lori*), for the defendant.

RILEY, C.J. This case arises out of an automobile accident occurring in Wisconsin. Plaintiff's decedents, Minnesota citizens, were struck and killed by defendant's decedent, a Michigan resident. The sole issue presented is whether the law of Wisconsin, the state in which the accident occurred, or the law of Michigan, the forum state and defendant's state of residence, is to be applied. The trial court held that under the doctrine of lex loci delicti Wisconsin law governs. The Court of Appeals reversed, holding that Michigan law applies. We affirm the decision of the Court of Appeals.

### I. FACTS

Plaintiff is the administratrix of the estates of her parents, Harry Stier Iler and Mary Lou Iler. The Ilers resided in Afton, Minnesota, having lived there since 1963. Plaintiff is also a Minnesota resident.

On September 3, 1982, the Ilers set out on a camping trip, their ultimate destination being a campground near Manistique, Michigan. They had planned to spend a short time in Michigan and then return to Afton. Mrs. Iler's niece, Maureen Briggs, accompanied them. Miss Briggs resided in Beldenville, Wisconsin.

En route, while driving in Wisconsin, the Ilers and Miss Briggs were killed as a result of being struck head-on by an automobile owned and driven by Robin Brzoznowski, who was also killed

in the accident.[1] Brzoznowski resided in Michigan, where he registered and insured his automobile.

Plaintiff initiated suit in a Minnesota probate court to have a nonfamily member appointed administrator of Robin Brzoznowski's estate. That action was dismissed for improper venue and lack of jurisdiction. Brzoznowski had no contacts in Minnesota other than the fact that his insurance carrier, United States Fidelity and Guaranty Company, did business there. Thus, under *Rush v Savchuk*, 444 US 320; 100 S Ct 571; 62 L Ed 2d 516 (1980), Minnesota was a constitutionally impermissible forum.

Following the dismissal in Minnesota, plaintiff brought this wrongful death action against defendant, a Michigan resident, administrator of Brzoznowski's estate.

Plaintiff moved for a declaratory judgment regarding which law would be applied to the substantive issues. The possibilities were Minnesota, where the Ilers resided; Wisconsin, where the accident occurred; or Michigan, the forum state and the state of Brzoznowski's residence. The state law to be applied is of great importance to the parties, because Wisconsin law, at the time this action was filed, limited damages for wrongful death to $25,000,[2] but neither Michigan nor Minnesota limits recoverable damages, leaving the trier of fact to determine the damage amount.[3]

---

[1] On May 18, 1984, Miss Briggs' claim, and that of her parents, against defendant was settled in full. Miss Briggs is not a party and is in no way connected to this lawsuit. Thus, the only connection Wisconsin has with this lawsuit is the fact that the accident took place within its borders.

[2] Wisconsin has amended its wrongful death damage provision to allow the spouse, children, or parents of the deceased to recover up to $50,000 for loss of society and companionship. See Wis Stat 895.04. However, the amendment became effective after the filing of this action and does not affect the outcome here.

[3] The issue before this Court centers on the question which state's

Plaintiff argued that under *Sexton v Ryder Truck Rental, Inc,* 413 Mich 406; 320 NW2d 843 (1982), Michigan, as the forum state, should apply its own law—lex fori. Defendant maintained that under the doctrine of lex loci delicti, the law of the state where the wrong occurred (Wisconsin) governs. Noting that the trend of the Michigan Supreme Court is toward applying the lex fori, the trial court, nonetheless, held for defendant, citing *Abendschein v Farrell,* 382 Mich 510; 170 NW2d 137 (1969). The trial court read *Sexton* to apply only in situations where all the parties are Michigan residents. Since the parties in this action are not all Michigan residents, the court held that *Abendschein* controlled.

The Court of Appeals granted an interlocutory appeal to consider the trial court's order. Noting that *Sexton* had no majority opinion, the Court of Appeals offered a lengthy quotation from *Smith v Pierpont,* 123 Mich App 33; 333 NW2d 165 (1983), in which the *Pierpont* Court adopted the position of Justice KAVANAGH in his concurrence in *Sexton.*

> [I]n a tort action commenced in this state, the law of this state is to be applied unless the court determines that a superior foreign state interest exists which calls for the application of the foreign law in order to reach a just resolution of the controversy. We think the presumption of *lex fori*

damage provision will govern the case. It should be noted that some courts have decided different issues in the same case by applying the law of different states. This practice is called dépeçage. However, neither party has requested that we employ this approach, and, thus, we express no opinion on the propriety of so doing. See, e.g., *Ewing v St Louis-Clayton Orthopedic Group, Inc,* 790 F2d 682 (CA 8, 1986); *In re Air Crash Disaster Near Chicago,* 644 F2d 594 (CA 7, 1981), cert den 454 US 878 (1981); *Bryant v Silverman,* 146 Ariz 41; 703 P2d 1190 (1985). See also Leflar, American Conflicts Law (3d ed), § 109, pp 221-222; Hill, *The judicial function in choice of law,* 85 Colum L R 1585 (1985); Reese, *Dépeçage: A common phenomenon in choice of law,* 73 Colum L R 58, 59-60 (1973); Wilde, *Dépeçage in the choice of tort law,* 41 S Cal L R 329 (1968).

is a logical and reasonable approach in that the fact that a Michigan court can obtain jurisdiction over the parties involved generally corresponds with a substantial level of state interest in the outcome of the litigation. However, the state which is the situs of the injury is entitled to a consideration of any disproportionate interest it may have in the controversy in order to avoid any injustice resulting from the application of *lex fori*. [*Olmstead v Anderson*, 145 Mich App 160, 165-166; 377 NW2d 853 (1985), quoting *Pierpont, supra*, 38.]

Since both parties to this action are not Michigan residents, the Court of Appeals weighed the interests of Michigan and Wisconsin to determine which law should be applied. Because defendant was a Michigan resident and had owned, registered, and insured his automobile under Michigan law, the Court of Appeals determined that no unfairness would result in applying Michigan law. Further, defendant's insurer, doing business in Michigan, had notice of potential for unlimited liability for negligence of defendant in the operation of his automobile. Finding no unfairness to the parties in applying Michigan law, the Court of Appeals could discern no interest of Wisconsin in applying its law. Thus the Court of Appeals turned to Michigan's interest stating:

Michigan has an avowed interest in favor or [sic] wrongful death actions resulting in full shifting of losses from those not at fault to those at fault. This is evident by the lack of a monetary limit on the recovery for the loss of society and companionship. Michigan's interest is particularly strong in regard to automobile accidents in light of Michigan's no-fault threshold scheme, MCL 500.3135; MSA 24.13135, in which only in a case of death or serious bodily injury or disfigurement does tort liability survive at all. [*Olmstead, supra*, 168.]

Therefore, the Court reversed the decision of the trial court, and held that Michigan law applied. We granted defendant's application for leave to appeal on April 22, 1986. 425 Mich 851.

II

The Court in *Sexton, supra,* 419-425, provided an extensive exposition on the origins and pros and cons of lex loci delicti. Thus, a brief summary of the doctrine will suffice here. Prior to *Sexton,* the substantive rights of parties in an action brought in Michigan were governed by the law of the place of the wrong (the lex loci delicti). The use of the doctrine has been traced as far back as *Wingert v Wayne Circuit Judge,* 101 Mich 395; 59 NW 662 (1894).[4] Some years later, in *Kaiser v North,* 292 Mich 49; 289 NW 325 (1939), two Michigan residents were involved in an accident in Ontario, Canada. Ontario had an automobile guest statute barring recovery by a guest passenger against a host driver. Michigan, however, permitted recovery under some circumstances. *Kaiser, supra,* 53. The Court squarely held that the law of the place of the accident governed and, thus, on the basis of Ontario law, denied the plaintiff recovery. This holding was consistent with the majority view at the time, as well as the original Restatement of Conflicts of Laws, § 378, which stated: "The law of the place of the wrong determines whether a person has sustained a legal injury."

The decline in popularity of the lex loci doctrine was initiated in the seminal case of *Babcock v Jackson,* 12 NY2d 473; 240 NYS2d 743; 191 NE2d 279 (1963). The court applied the law of New York,

---

[4] For an interesting discussion on the paucity of historical justification for lex loci delicti, see *Abendschein v Farrell,* 11 Mich App 662, 668-674; 162 NW2d 165 (1968).

as the state of the parties' residence, origin of the guest/host relationship, and beginning and anticipated end point of the trip, rather than the law of Ontario, where the accident occurred. After *Babcock,* a number of courts reexamined the advisability of adhering to the lex loci delicti doctrine.

In Michigan, the question of the continuing viability of lex loci delicti was presented in *Abendschein, supra.* That case also involved an accident which occurred in Ontario. The plaintiffs resided in New York and the defendants in Michigan. The trip began in New York and was to end in Michigan. The plaintiffs alleged that defendant Farrell caused the accident by his gross negligence. Under Ontario law, recovery was barred. The plaintiffs could recover under Michigan law if they could prove gross negligence or wilful and wanton misconduct on the part of the host driver.[5] New York, on the other hand, had no guest statute. Thus, the plaintiffs could have recovered under the laws of New York or Michigan. Rather than adopting an alternative methodology as argued by the plaintiffs, the *Abendschein* Court reaffirmed its adherence to the lex loci delicti doctrine. In light of the perceived advantages of lex loci—certainty, predictability, ease of application, and discouragement of forum shopping—the unanimous Court was unpersuaded that lex loci should be abandoned, despite "occasionally unjust" results. *Abendschein, supra,* 516.

At the time of the *Abendschein* decision, and since, the doctrine of lex loci has been heavily criticized by legal scholars.[6] The reputed advan-

---

[5] The statute involved, MCL 257.401; MSA 9.2101, once a fertile source of conflict of laws controversies, was found to be unconstitutional in *Manistee Bank & Trust Co v McGowan,* 394 Mich 655; 232 NW2d 636 (1975).

[6] See the discussion in *Sexton, supra,* 420-425. No area of law seems

tages of certainty and predictability of results may have been true in theory, but were often illusory in practice. As noted in *Sexton, supra,* 426-431, courts employed escape devices to avoid potentially harsh results. The two main manipulative techniques were "procedural characterization" and the "public policy" exception. *Id.,* 426. Procedural characterization involves characterization of an issue as procedural rather than substantive, and then applying forum law to the procedural issues. Courts, thus, were able to evade applying the law of the state in which the wrong occurred.[7]

to provide scholars as fecund a milieu for commentary as does conflicts of laws. For recent discussions on the subject see Corr, *Modern choice of law and public policy: The emperor has the same old clothes,* 39 U Miami L R 647 (1985); Corr, *Criminal procedure and the conflict of laws,* 73 Geo L J 1217 (1985); Miller & Crump, *Jurisdiction and choice of law in multistate class actions after* Phillips Petroleum Co v Shutts, 96 Yale L J 1, 57-66 (1986); Hill, *The judicial function in choice of law,* 85 Colum L R 1585 (1985); Juenger, *Conflict of laws: A critique of interest analysis,* 32 Am J Comp L 1 (1984); Korn, *The choice-of-law revolution: A critique,* 83 Colum L R 772 (1983); Kozyris, *Corporate wars and choice of law,* 1985 Duke L J 1; Morrison, *Death of conflicts,* 29 Vill L R 313 (1983-84); Morse, *Choice of law in tort: A comparative survey,* 32 Am J Comp L 51 (1984); Pielemeier, *Constitutional limitations on choice of law: The special case of multistate defamation,* 133 U Pa L R 381 (1985); Reese, *The law governing airplane accidents,* 39 Wash & Lee L R 1303 (1982); Richman, *Diagramming conflicts: A graphic understanding of interest analysis,* 43 Ohio St L J 317 (1982); Sedler, *Choice of law in Michigan: Judicial method and the policy centered conflict of laws,* 29 Wayne L R 1194 (1983); Smith, *Resolution of true conflicts without value judgments: A modified comparative-impairment approach,* 61 U D J Urban L 433 (1984); *Symposium on interest analysis in conflict of laws: An inquiry into fundamentals with a side glance at products liability,* 46 Ohio St L R 457 (1985); *Symposium: Conflict of laws (Part I),* 34 Mercer L R 1 (1982); *Symposium: Conflict of laws (Part II),* 35 Mercer L R 417 (1984); Carteau, *Comments: Conflicts of law and successions: Comprehensive interest analysis as a viable alternative to the traditional approach,* 59 Tul L R 389 (1984); Cray, *Comment: Choice of law in right of publicity,* 31 UCLA L R 640 (1984).

[7] An example of procedural characterization and the confusion which can result in using this escape device is provided by two New York cases. In *Kilberg v Northeast Airlines, Inc,* 9 NY2d 34; 211 NYS2d 133; 172 NE2d 526 (1961), the court declared that damages in wrongful death actions relate to the "remedy" and thus were procedural. Therefore, the New York court applied New York's unlimited

The public policy exception was invoked when the application of a foreign law would be violative of Michigan public policy. Early Michigan cases required a very substantial difference in policy before applying this exception, one court requiring that the foreign law be "against good morals or natural justice." *Sexton, supra,* 428, quoting *Eskovitz v Berger,* 276 Mich 536, 541; 268 NW 883 (1936). This limited exception was later expanded in *Lieberthal v Glens Falls Indemnity Co,* 316 Mich 37; 24 NW2d 547 (1946), in a plurality opinion. Three of the justices were of the opinion that a constitutionally enacted statute conclusively indicates the state's public policy and, therefore, is sufficient reason to apply forum law. *Sexton, supra,* 431.

In *Sweeney v Sweeney,* 402 Mich 234; 262 NW2d 625 (1978), the Court used the public policy exception in order to apply Michigan law regarding the issue of intrafamily immunity.[8] Both parties were Michigan residents, the defendant being the plaintiff's father. They were involved in an automobile accident in Ohio, whose law would have barred the suit on the basis of intrafamily immunity. Michi-

damage provision in a case where the victim died in an airplane crash in Massachusetts, a state which limited damages to $15,000. However, this rationale was later disaffirmed in *Davenport v Webb,* 11 NY2d 392; 230 NYS2d 17; 183 NE2d 902 (1962).

Despite *Davenport,* a federal court cited *Kilberg* for support in concluding that damages were a procedural matter and applied Michigan law to that element. *Papizzo v O Robertson Transport, Ltd,* 401 F Supp 540 (ED Mich, 1975). See the discussion in Sedler, *Choice of law in Michigan: A time to go modern,* 24 Wayne L R 829, 840-842 (1978).

[8] Other cases making use of the public policy exception include: *Tucker v Norfolk & W R Co,* 403 F Supp 1372 (ED Mich, 1975) (public policy exception regarding intrafamily immunity); *Shaheen v Schoenberger,* 92 Mich App 491; 285 NW2d 343 (1979) (Florida wrongful death damage limitation contrary to Michigan public policy where all parties are Michigan residents); *Branyan v Alpena Flying Service, Inc,* 65 Mich App 1; 236 NW2d 739 (1975) (Michigan public policy offended by wrongful death damage limitation).

gan, on the other hand, had abolished intrafamily immunity in *Plumley v Klein,* 388 Mich 1; 199 NW2d 169 (1972). Recognizing that the case presented an "opportunity to reappraise our entire conflict of laws policy," *Sweeney, supra,* 239, the Court declined to do so, fearing the potential "unfortunate outcome in the next case that comes along." *Id.,* quoting Juenger, *Torts choice of law in Michigan,* 52 MSB J 730 (1973). Instead, the Court elected a more conservative solution, holding that application of Ohio law would frustrate Michigan public policy. The Court, therefore, applied the public policy exception to the lex loci doctrine, rather than making sweeping changes with potential unforeseen consequences. In so doing, the Court evidenced a willingness to reexamine the lex loci doctrine, but in a cautious manner, case by case. That reexamination took place four years later in *Sexton.*

### III

The consolidated appeals in *Sexton, supra,* presented an excellent opportunity to abrogate the lex loci doctrine. Both cases involved only Michigan citizens and accidents which occurred in another state.

In *Sexton,* the plaintiff and a coemployee were operating a truck in Virginia during the course of their employment. The trip began and was to terminate in Michigan. The truck overturned in Virginia, seriously injuring the plaintiff. The defendant, a Florida corporation authorized to do business in Michigan, was the lessor of the truck which was registered and titled in its name. The defendant had leased the truck to the plaintiff's employer at its Grand Rapids, Michigan, office where the truck had been garaged and insured.

*Sexton,* 414. The plaintiff brought an action under the Michigan motor vehicle owners' liability statute, MCL 257.401; MSA 9.2101, which subjected the owner of a motor vehicle to liability for any injury arising out of the negligent operation of that vehicle. Virginia law provided for no such owner liability.

On the basis of *Abendschein, supra,* the trial judge granted summary judgment for the defendant. Since the accident occurred in Virginia, which did not provide for owner liability, and finding no applicable exception to the lex loci doctrine, the judge felt constrained to hold that Virginia law governed and that the plaintiff had no cause of action. The judge, however, expressed his opinion that the result was unfair and extreme and arrived at only because of the constraints of stare decisis. *Sexton, supra,* 415-416.

The Court of Appeals reluctantly affirmed, addressing a plea to the Michigan Supreme Court to abandon the lex loci doctrine.

The companion case to *Sexton* in the Supreme Court was *Storie v Southfield Leasing, Inc, supra* (appealing 90 Mich App 612; 282 NW2d 417 [1979]), which presented similar facts. The plaintiff's decedent, a Michigan citizen, was a passenger in an airplane owned and registered by defendant Southfield Leasing, Inc. The aircraft was piloted by the president of Lebow Associates, Inc, a Michigan corporation. The decedent was a Lebow employee. Southfield Leasing, also a Michigan corporation with its principal place of business in Southfield, Michigan, had leased the aircraft to Lebow.

The decedent and the pilot were on a business trip, which originated in Michigan and was to end in Ohio, when the aircraft crashed near Akron, Ohio. Both occupants were killed.

The plaintiff brought a wrongful death action

against Southfield Leasing. In turn, Southfield Leasing filed a third-party complaint against Lebow for indemnity. Eventually, the plaintiff stipulated that the only claim against Southfield Leasing was under the Michigan aircraft owners' liability statute, MCL 259.180a; MSA 10.280(1), which provides that the owner of an aircraft is liable for any injuries occurring because of the negligent operation of the aircraft. Ohio law contained no aircraft owner liability provisions.

As in *Sexton,* the trial court granted summary judgment for the defendant, holding that Ohio law applied. The Court of Appeals reversed, finding that Ohio law contravened Michigan public policy expressed in the owners' liability statute. The Court made use of the public policy exception to the lex loci doctrine, holding that the Michigan aircraft owners' liability statute applied.

Analysis of the *Sexton* decision is made somewhat difficult by the fact that none of the opinions garnered a majority. We reversed the decision of the Court of Appeals in *Sexton,* but affirmed in *Storie.* The end result was that Michigan law was applied in both cases.

In the lead opinion, Justice WILLIAMS, joined by two other justices, discussed the pros and cons of lex loci delicti.

> The traditional advantages advanced on behalf of the *lex loci* rule have included discouraging forum shopping and furthering the goals of certainty and predictability through its ease of application, thus simplifying the task of both lawyers and the courts. [*Sexton, supra,* 421.]

However, upon closer examination, it became clear that in practice the reputed advantages of lex loci delicti did not exist. The doctrine was

neither generally followed nor consistently applied.

> "[A]s jurisdiction after jurisdiction has departed from the law of the place of the wrong as the controlling law in tort cases, regardless of the issue involved, that law no longer affords even a semblance of the general application that was once thought to be its great virtue." [*Id.*, 424, quoting *Reich v Purcell,* 67 Cal 2d 551, 555; 63 Cal Rptr 31; 432 P2d 727 (1967).]

In addition, the use of escape devices to avoid applying the law of the place of the wrong chipped away at the veneer of predictability and certainty of results. These being the primary advantages advanced in favor of lex loci delicti, Justice WILLIAMS concluded that "in the real world the argument of certainty, the chief argument in favor of *lex loci delicti,* no longer is tenable." *Id.,* 432.

Lex loci delicti was also reputed to advance the prevention of forum shopping. However, this advantage was not present in cases such as *Sexton* and *Storie,* in which the parties were citizens of the forum.

> The other argument in favor of *lex loci delicti,* avoidance of forum shopping, is not a strong argument as against citizens of the forum state who presumably have every reason of convenience and economy to be entitled to service in their own state. To this, of course, can be added the fact that the forum state generally has an interest in seeing that its injured citizens are well-served and that its citizen defendants are afforded every protection that such citizens would have in their own state. Additionally, where both the plaintiff and the defendant are citizens of the forum state, the state where the wrong took place will normally have no interest in the litigation. [*Sexton, supra,* 432-433.]

Therefore, as a result of examining the underlying rationales for lex loci delicti, and finding that in practice those rationales are not advanced, Justice WILLIAMS determined that there was no reason to preserve the lex loci delicti rule. Furthermore, "reason" and "practical" pressures militate for the application of forum law. *Sexton, supra,* 433.

Thus, Justice WILLIAMS concluded:

> As a consequence of these premises, in the normal common-law tradition, we hold that where Michigan residents or corporations doing business in Michigan are involved in accidents in another state and appear as plaintiffs and defendants in Michigan courts, the courts will apply the *lex fori,* not the *lex loci delicti,* and we do so without reference to any particular state policy. We reach this conclusion on the facts and reasoning herein developed. We do not here adopt the law of dominant contacts or any other particular methodology, although any such reasoning may, of course, be argued where persuasive and appropriate. [*Id.,* 433.]

In his concurrence, Justice KAVANAGH, joined by two other justices, agreed with the result reached by Justice WILLIAMS. Finding the fact that the accidents did not occur in Michigan to be of no great significance, Justice KAVANAGH saw no reason to apply the law of a foreign jurisdiction.

> The power of a state to effect legal consequences is not limited to occurrences within the state if it has control over the status which gives rise to those consequences. . . .
>
> The status of ownership giving rise to the legal consequence of liability has been regulated in Michigan by [the owners' liability statutes] and so the occurrence of the accident beyond Michigan's

boundaries is not controlling under these Michigan laws. [*Id.,* 440-441.]

Justice LEVIN, concurring in both Justice WIL-LIAMS' and Justice KAVANAGH's opinions, offered a separate explanation.

> Justice WILLIAMS' opinion would hold that, in an action commenced in Michigan growing out of an accident in another state, Michigan common and statutory law shall be applied whenever the plaintiff and defendant are both either residents of or corporations doing business in Michigan. Justice KAVANAGH's opinion would hold that in a tort action commenced in Michigan, the domestic law of this state shall govern absent a reason for applying the law of another state and that the place of the wrong is not a reason for not applying Michigan domestic law. [*Id.,* 441.]

Agreeing with Justice WILLIAMS that there was no reason not to apply Michigan law in the two cases, Justice LEVIN expressed a preference for the approach of Justice KAVANAGH, stating:

> [W]e should go the distance and declare that Michigan law will apply in all personal injury and property damage actions without regard to whether the plaintiffs and defendants are all Michigan persons unless there is compelling reason for applying the law of some other jurisdiction, and that merely because the injury arose out of an occurrence in another state is not such a reason. [*Id.,* 442.]

Justice LEVIN also expressed a reticence toward having the *Sexton* opinion expanded into other fields of law, such as contract or property law.

Two justices were not persuaded that a retreat from lex loci delicti was necessary, and thus dissented.

IV

The plurality opinion in *Sexton* has proven to be somewhat difficult for the courts to apply. Some courts have looked to the parties' residences and the claims asserted to determine whether *Sexton* controls the resolution of the choice-of-law issue. In *Severine v Ford Aerospace,* 118 Mich App 769; 325 NW2d 572 (1982), the plaintiff, a Pennsylvania resident, who allegedly was the victim of employment discrimination, brought an action claiming a violation of the Michigan civil rights statute. The Court interpreted *Sexton* to hold:

> [I]n tort actions arising from out-of-state aircraft or motor vehicle accidents, Michigan courts will apply *lex fori* so long as the parties are Michigan residents or corporations doing business in Michigan. Three of the justices would apply forum law without regard to whether all of the parties were Michigan residents absent a compelling reason to apply the law of another jurisdiction. *Id.,* (KAVANAGH, J., *concurring;* LEVIN, J., *concurring*). The Court declined to adopt any alternative choice-of-law methodology. However, the holding of the case was specifically limited to personal injury and property damage actions. Judge [sic] LEVIN, in his concurring opinion, emphasized that choice of law in other fields was to continue to be governed by prior precedents. *Id.* . . . Therefore, since we do not perceive plaintiff's employment discrimination claim as one for personal injury or property damage, we continue to apply the *lex loci delicti* in this instance. [*Id.,* 776.]

Since the effect of any discriminatory employment decision was felt by the plaintiff in Pennsylvania, the Court held that Michigan choice-of-law principles directed that Pennsylvania law be applied. The plaintiff had pled only a violation of Michigan law; hence, the Court of Appeals upheld

the trial court's grant of summary judgment in favor of the defendant.

Similarly, in *Hamann v American Motors Corp,* 131 Mich App 605; 345 NW2d 699 (1983), the Court indicated that forum law is applicable only where a plaintiff and a defendant are Michigan residents. Since the plaintiff was a resident of Tennessee, and the injury occurred there, the Court affirmed the trial court's determination that, under the rule of lex loci delicti, Tennessee law would apply.

A federal court interpreted *Sexton* as abandoning lex loci delicti only in "certain personal injury and property damage cases." *Carver v Sheller-Globe Corp,* 636 F Supp 368 (WD Mich, 1986). The court distinguished *Carver* from *Sexton:*

> *Sexton* dealt with torts arising from accidents involving aircraft or motor vehicles. This case deals with an employment relationship. Further, *Sexton* cannot be applied to this case as neither plaintiff nor defendant are Michigan residents. At most, defendant does business in Michigan as a plant is located within the state. The requirements set out in *Sexton* are not met in this case. [*Id.,* 370.]

The court did not directly apply lex loci delicti as in *Severine* and *Hamann, supra,* but instead weighed the interests of the competing states, Michigan and Illinois. The court concluded that Michigan had no interest in the action since neither party was a resident of Michigan and all the events culminating in the action took place in Illinois. Therefore, Illinois had the greater interest and its law applied.

The *Carver* court is not alone in weighing the interests of the involved states to determine which state has the greater interest in having its law

applied.[9] This weighing of interests generally has come into play in those cases in which both parties are not Michigan residents. The federal courts, applying Michigan law first used this weighing procedure. In *Bennett v Enstrom Helicopter Corp (On Rehearing)*, 686 F2d 406 (CA 6, 1982), the plaintiff was a New Zealand resident suing for the wrongful death of her husband who also had been a New Zealand resident. The fatal accident occurred in New Zealand on a flight which began and was to end there. New Zealand law would have barred the action, but Michigan law would not. Thus, on the basis of *Sexton,* the plaintiff requested that Michigan law be applied. The court surveyed the *Sexton* opinions, holding that under either the approaches advocated by Justice WILLIAMS or Justice KAVANAGH, New Zealand law would apply. Justice WILLIAMS' approach would not prescribe Michigan law because the plaintiff was not a resident of Michigan. In addition, since most of the contacts involved New Zealand, the court determined that Michigan had little interest in applying its own law. Therefore, the court determined that New Zealand law controlled.

The case of *General Motors Corp v Nat'l Auto Radiator Mfg Co, Ltd,* 694 F2d 1050 (CA 6, 1982), is similar. Noting that not all the parties were Michigan residents, the court distinguished *Sexton* and held that Ontario law, the lex loci delicti, applied. The court determined that the primary issue in the case centered on an employer-employee relationship in Ontario. As a result, Ontar-

---

[9] For other federal court applications of *Sexton* see *Boyd v Keystone Lab,* 774 F2d 1161 (CA 6, 1985) (affirming application of Michigan law); *Mair v McCormick Place,* unpublished memorandum opinion of US Dist Ct, ND Ill, decided October 24, 1985 (Docket No 85 C 1220) (interests of Illinois and Michigan weighed, with Illinois' interest being found greater); *Comshare, Inc v Execucom Systems Corp,* 593 F Supp 981 (ED Mich, 1984) (*Sexton* found not applicable in employment-contract case).

io's interest in the employment relationships within its borders outweighed any interest Michigan may have had in applying its law. Furthermore, Ontario law did not violate Michigan public policy.

The first Michigan case in which the interests of the involved states were evaluated was *Pierpont, supra,* upon which the Court of Appeals in this case relied heavily. The Court adopted Justice KAVANAGH's position that the law of the forum should control absent a "superior foreign state interest." *Id.,* 38. Forum law would be displaced in order to "reach a just resolution of the controversy." *Id.* The Court stated that "the presumption of *lex fori* is a logical and reasonable approach in that the fact that a Michigan court can obtain jurisdiction over the parties involved generally corresponds with a substantial level of state interest in the outcome of the litigation." *Id.*

In *Pierpont,* the parties were both Michigan residents. The plaintiffs sued the defendant for medical malpractice, which occurred at one of the defendant's Wisconsin offices. The Court concluded that Michigan had a strong interest in applying its law to cases involving Michigan citizens. Wisconsin, on the other hand, did not have a superior interest, since no Wisconsin resident or property was involved. As a result, the Court held that Michigan law governed.

While the *Pierpont* Court reached the correct result, its reasoning, and adoption of Justice KAVANAGH's approach may only be considered dicta. The facts presented were the same as those in *Sexton*—two Michigan residents involved in a lawsuit in which the alleged wrong took place in a foreign jurisdiction. Consequently, *Pierpont* was controlled by *Sexton* and could have been decided without determining the interests of Michigan or

Wisconsin. As a result, *Pierpont* cannot be read to stand for the proposition for which it is generally cited—that in cases in which the parties are not both residents, the law of the forum applies unless a superior foreign interest is shown. See *Smith v Teledyne Industries, Inc,* 578 F Supp 353 (ED Mich, 1984) (erroneously reading *Pierpont* as involving an out-of-state defendant).

Another Michigan case which surveyed the post-*Sexton* conflicts landscape, succinctly came to the same conclusion as the *Pierpont* Court:

> [W]here all parties were Michigan residents, the Court has applied Michigan Law. *Smith v Pierpont.* In such a case, the WILLIAMS and KAVANAGH views coalesce: Michigan has a very strong interest in applying its law to a case concerning only its residents. Where either plaintiff, *Bennett v Enstrom, supra,* or defendant, *General Motors v National Auto, supra,* is not a Michigan resident nor doing business in Michigan, courts have compared the interests of each jurisdiction in having its law govern the case. [*Vogh v American International Rent-A-Car, Inc,* 134 Mich App 362, 368; 350 NW2d 882 (1984).]

The trial court had granted summary judgment for the defendant, premised upon the inapplicability of Michigan law. The Court analyzed the views of Justice WILLIAMS and Justice KAVANAGH and determined that, under either view, the plaintiff may have been able to assert Michigan law and thus recover. Therefore, the Court of Appeals reversed and remanded the case for further factual determinations in order to ascertain whether Michigan law would apply.

The most recent Michigan case involving a choice-of-law issue is *Hampshire v Ford Motor Co,* 155 Mich App 143; 399 NW2d 36 (1986), in which

an application for leave to appeal to this Court was denied *post,* 852. A California resident, while driving in California, was struck by an automobile manufactured by the defendant. At the time of the accident, the automobile was stolen.[10] The plaintiff brought an action in Michigan, alleging that the defendant had negligently designed the ignition-locking system in such a manner as to make the defendant's automobiles easier to steal than other cars.[11] The only Michigan connections were that the defendant had its headquarters in Michigan and that Michigan was the forum state. After weighing the interests of California and Michigan, the Court determined that California had a substantial interest in having its law applied, while Michigan had none. The Court took into account the plaintiff's residence, the place where the automobiles were located and registered, the place of the accident, and the fact that the Michigan connections were minimal at best.

In sum, Michigan courts have not been entirely consistent in interpreting *Sexton.* Some have read *Sexton* as being applicable only in cases where the parties are all Michigan residents bringing an action for personal injury. Other courts have read *Sexton* to automatically require a balancing of interests in the event that the case before them is not on all fours with *Sexton.* The latter view appears to be the position in the majority of cases, as well as the trend. The Michigan cases which narrowly interpret *Sexton* were released relatively soon after the decision was issued. See *Severine* and *Hamann, supra.* The interest-weighing cases

---

[10] The driver of the stolen automobile, also a California resident, was not the thief, but had been lent the car by the thief.

[11] Plaintiff's position was that stolen automobiles are more likely to be involved in injury-causing accidents than are other cars, thus giving rise to a duty to the plaintiff by the defendant to make its automobiles more difficult to steal.

are greater in number, as well as being more recent. See *Vogh, Olmstead,* and *Hampshire, supra.*

The cases in which the plaintiff was not a resident, but brought suit in Michigan (presumably asserting jurisdiction over the defendant on the basis of the defendant's contacts with Michigan) have generally applied lex loci delicti, either through a strict reading of *Sexton* or by weighing the interests of the states involved. However, none of these cases presented a circumstance, such as in this case, in which the place of injury may only be described as fortuitous. In all of those cases, the injury occurred in states in which the plaintiff had substantial contacts or actually resided in fact at the time of the injury. The plaintiffs' contacts with the forum states, whose laws were ultimately applied, could be described as neither fleeting nor fortuitous. That is not the case here. Plaintiff did not reside in or have substantial contacts with the State of Wisconsin. The accident—a completely unplanned event—was the only contact with Wisconsin. Therefore, this case is distinguishable from those cases brought by out-of-state plaintiffs in which lex loci delicti was applied.

V

Despite the fact that *Sexton* did not produce a majority opinion, some generalizations may be formulated. Clearly, a majority of the Court abandoned lex loci delicti as an absolute rule. The reputed benefits of lex loci delicti were no longer tenable, and the precedents for applying the doctrine were either overruled or substantially weakened. As a result, there was no reason to apply lex loci delicti and strong justification for applying Michigan law. None of the opinions adopted a

particular choice-of-law methodology, but Justice WILLIAMS suggested that "such reasoning may, of course, be argued where persuasive and appropriate." *Sexton, supra,* 433. Since no specific methodology was adopted, each case must be evaluated on the circumstances presented. Justice WILLIAMS acknowledged this by stating that the holding was reached in the "normal common-law tradition." Under Justice KAVANAGH's approach, a case would be examined to determine whether the foreign elements are so substantial as to override a presumption that forum law applies. Thus, even under the more narrow position of Justice WILLIAMS, *Sexton* is applicable to cases not exactly on point factually.

As presented in *Sexton,* only Michigan residents were involved in the lawsuit. In that situation, there was no rational reason to apply lex loci delicti. To do so would not have promoted certainty, predictability of results, ease of application, or prevention of forum shopping. Furthermore, since the parties were citizens of Michigan and not residents of the state of the injury, the state of the injury did not have an interest in having its law applied. Hence, there was no rational justification for displacing the law of the forum. That same reasoning may be applied to tort cases presenting somewhat different factual scenarios. The question to be resolved is whether this case presents a situation in which reason requires that foreign law supersede the law of this state. It is important to note that none of the opinions considered the fact that the accident took place outside Michigan to be of great or particular significance, with Justice KAVANAGH specifically so stating. *Sexton, supra,* 440. Justice WILLIAMS considered the justifications for lex loci delicti and, finding them no longer tenable in practice, determined that there was no

reason to supplant the law of the forum. It is with these principles in mind that we analyze this case.

Here, both parties to the action were citizens of a state which allows recovery of unlimited damages in wrongful death actions. Their automobiles were registered, licensed, and insured in those states. Their insurers were on notice regarding potential unlimited liability and wrote insurance policies with that potentiality factored into the premium. Unquestionably, no unfairness would result, therefore, in applying Michigan law. Both parties, as well as their insurers, were on notice regarding the possibility of unlimited liability and presumably had insured against that eventuality.

However, our analysis does not end there. The next step is to determine whether this case is sufficiently different from *Sexton* to justify departing from its rationale. In *Sexton,* the fact that the accidents took place in two states other than Michigan was not adequate to displace Michigan law when all the parties were Michigan residents. To do so would not advance the interests of certainty, predictability of results, or prevention of forum shopping. Furthermore, "where both the plaintiff and the defendant are citizens of the forum state, the state where the wrong took place will normally have no interest in the litigation." *Sexton, supra,* 433 (WILLIAMS, J.).

In this case, plaintiff is not a Michigan resident. However, that fact does not affect the conclusion reached in *Sexton* that the chief conceptual underpinnings of lex loci delicti—certainty and predictability—are no longer viable. The Court arrived at that conclusion without reference to the parties' citizenship. Therefore, to apply lex loci delicti in this case would advance those rationales no more than it would have in *Sexton.*

Additionally, the prevention of forum shopping

was not furthered in *Sexton* as "citizens of the forum state . . . presumably have every reason of convenience and economy to be entitled to service in their own state." *Sexton, supra,* 433 (WILLIAMS, J.). This rationale deserves some discussion because plaintiff is not a Michigan citizen, and, thus, defendant argues that plaintiff has engaged in forum shopping—particularly because plaintiff initially brought suit in Minnesota.

The concern surrounding forum shopping stems from the fear that a plaintiff will be able to determine the outcome of a case simply by choosing the forum in which to bring the suit. Presumably, plaintiffs will bring suit in the forum whose law is the most advantageous. In so doing, the plaintiff may be attempting to obtain a favorable result simply by choosing the right forum, raising the fear that

> applying the law sought by a forum-shopping plaintiff will defeat the expectations of the defendant or will upset the policies of the state in which the defendant acted (or from which the defendant hails). As Justice Stevens pointed out in [*Allstate v Hague,* 449 US 302; 101 S Ct 633; 66 L Ed 2d 521 (1981)], the latter concern stems from our desire for interstate harmony and national unity. [Morrison, *Death of conflicts,* 29 Vill L R 313, 362 (1983-84).]

There is no forum-shopping concern when the forum is also the plaintiff's state of citizenship. However,

> [w]hen the plaintiff forgoes the economies afforded by bringing suit at home . . . we may begin to be suspicious about whether the plaintiff has sued elsewhere primarily in order to obtain the application of a particular law and thus whether the plaintiff has attempted to "buy" a particular re-

sult. Yet, there *are* other more "legitimate" reasons for plaintiffs to sue elsewhere than at home, most notably to obtain jurisdiction over the defendant. This jurisdiction in turn usually should keep courts from wondering too deeply about whether the plaintiff is a forum shopper because the jurisdictional prerequisites will mitigate the dangers we usually fear will result from forum shopping.

The court will have to have either general or specific jurisdiction over the defendant. The assertion of general jurisdiction will be permissible only if the defendant is a resident of the forum or has major continuous connections with the forum. Such a defendant's expectations theoretically will have been framed with a view towards the possible application of forum law to his activities; hence, the defeating-the-defendant's-expectations reason for objecting to a possible forum-shopping plaintiff does not exist. Further, interstate harmony is not disrupted by a forum's applying it's [sic] own law to a forum defendant. [*Id.,* 362-363.]

Here, plaintiff initiated suit in Minnesota which, being plaintiff's home state, raises no forum-shopping concern. However, suit could not be maintained there because of lack of jurisdiction over defendant. Thereafter, plaintiff initiated this action in defendant's home state, where there is no question that jurisdiction is proper. Since defendant is a citizen of Michigan, there can be no serious argument that applying Michigan law will defeat his expectations. Thus, in this case, applying lex loci delicti does not promote the prevention of forum shopping. Plaintiff's choice of Michigan, being the state of defendant's citizenship and thus subjecting defendant to general jurisdiction, is perfectly legitimate. Furthermore, as pointed out in *Sexton* by both Justices WILLIAMS and LEVIN, in a case where there is serious concern that the plaintiff engaged in forum shopping, the defendant

may request dismissal under the doctrine of forum non conveniens. See *Anderson v Great Lakes Dredge & Dock Co,* 411 Mich 619; 309 NW2d 539 (1981); *Cray v General Motors Corp,* 389 Mich 382; 207 NW2d 393 (1973). Therefore, just as in *Sexton,* the argument that lex loci delicti prevents forum shopping does not support application of the doctrine in this case.

In *Sexton,* the state where the wrong occurred had no interest in the litigation because no citizen of that state was a party to the action. This rationale holds true whether the parties are from the same state, as in *Sexton,* or, as here, from different states. The operative fact is that neither party is a citizen of the state in which the wrong occurred. Since neither party in this case is a citizen of Wisconsin, that state has no interest in seeing its limitation of damage provision applied. That is not to say that the state in which the injury takes place will never have an interest in litigation arising out of the injury if none of its citizens are involved. The injury state always has an interest in conduct within its borders, whether or not its citizens are involved. However, the issue in this case does not involve conduct, but, instead, damages or limitation thereof.

> Limitations of damages for wrongful death . . . have little or nothing to do with conduct. They are concerned not with how people should behave but with how survivors should be compensated. The state of the place of the wrong has little or no interest in such compensation when none of the parties reside there. [*Reich v Purcell, supra,* 556.]

Damage-limitation provisions are designed to protect defendants from exorbitant damage awards. However, as noted in *Reich:*

That concern is . . . primarily local and we fail to perceive any substantial interest Missouri [the state where the injury occurred] might have in extending the benefits of its limitation of damages to travelers from states having no similar limitation. Defendant's liability should not be limited when no party to the action is from a state limiting liability and when defendant, therefore, would have secured insurance, if any, without any such limit in mind. A defendant cannot reasonably complain when compensatory damages are assessed in accordance with the law of his domicile and plaintiffs receive no more than they would had they been injured at home. [*Id.*]

See also *Bryant v Silverman*, 146 Ariz 41; 703 P2d 1190 (1985) (state of injury has no strong interest in compensation where plaintiff is nonresident); *Murphy v Colorado Aviation, Inc*, 41 Colo App 237; 588 P2d 877 (1978) (applying forum law in action brought by nonresident plaintiff against resident defendant); *Proprietors Ins Co v Valsecchi*, 435 So 2d 290 (Fla App, 1983) (place of injury mere happenstance and thus not interested in having its law applied) (see also cases cited in *Valsecchi*).[12]

Finding as we do that applying lex loci delicti will not promote the reputed advantages of the doctrine and that Wisconsin has no interest in seeing its law applied, we see no rational reason to

---

[12] In this case, the parties argued for the application of either Wisconsin or Michigan law. Neither party advanced the position that Minnesota law should be applied. Furthermore, Minnesota law regarding wrongful death damages does not seriously conflict with Michigan law, as neither state puts a cap on recovery. Thus we did not consider the application of Minnesota law in this case. However, a case may arise, similar to the present one, in which the law of the plaintiff's home state does conflict with Michigan law. In that situation, the option of displacing Michigan law for the law of the plaintiff's citizenship will be presented. Nevertheless, the analysis will be the same as here.

displace Michigan law in this case.[13] Since there is no reason to apply Wisconsin law, it is, therefore, unnecessary to undertake an analysis of the interests of Michigan.[14] Thus, we reach no opinion on the analysis of the Court of Appeals regarding Michigan's interest in shifting losses in wrongful death actions from those not at fault to those at fault. Such an analysis is unnecessary in this case. However, in another case in which the state of injury does have an interest in having its law applied, such an analysis might be necessary and proper.

### VI. CONCLUSION

In sum, this case involves a suit brought by a party not a citizen of Michigan, against a Michigan resident, arising out of an accident occurring in a state in which neither party resided. The states in which both plaintiff and defendant were citizens allow for unlimited recovery in wrongful death actions, but the state of the accident does not. Applying lex loci delicti will not advance the conceptual rationales underlying the doctrine. Furthermore, no unfairness would result to the par-

---

[13] The constitutional limitations on choice of law are rather meager and clearly not implicated in this case. The Due Process Clause of the Fourteenth Amendment and the Full Faith and Credit Clause of art IV, § 1, require that for a state to apply its own law it "must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Allstate v Hague, supra,* 313. See also *Phillips Petroleum Co v Shutts,* 472 US 797; 105 S Ct 2965; 86 L Ed 2d 628 (1985) (holding as unconstitutional the application of Kansas law in a class action where over ninety-nine percent of the oil leases involved, and ninety-seven percent of the plaintiffs, had no connection with Kansas).

Here, since defendant is a citizen, there is no question of the constitutionality of applying forum law.

[14] This is consistent with *Sexton, supra,* as no opinion in that case discussed the purpose of the owners' liability statutes relative to resolving the choice-of-law issue. Only when Justice WILLIAMS considered the extraterritorial application of the statutes did he enunciate the purpose of those statutes. See *Sexton, supra,* 437-438.

ties in applying Michigan law. Finally, since no citizen of Wisconsin is involved in the action, it has no interest in seeing its law applied. In light of the above, there is no rational reason to displace Michigan law. The decision of the Court of Appeals is affirmed.

LEVIN, BRICKLEY, CAVANAGH, BOYLE, and ARCHER, JJ., concurred with RILEY, C.J.

GRIFFIN, J., took no part in the decision of this case.