**Thomas H. BEST and Patricia Best, his wife, Plaintiffs,**

v.

**DANTE GENTILINI TRUCKING, INC.,** an Illinois corporation, Kenneth Ray Woods, Tricil Environmental Management, Inc., a Tennessee corporation, C.H. Billingsley, Jr., and Ryder Truck Rental, Inc., a Florida corporation, jointly and severally, Defendants.

No. 90–CV–70579–DT.

United States District Court, E.D. Michigan, S.D.

Nov. 21, 1991.

 

Denise M. Smith, Costanzo Z. Lijoi, Detroit, Mich., for plaintiffs Thomas H. Best and Patricia Best.

Mark Shreve, Troy, Mich., for defendants Dante Gentilini Trucking, Inc. and Kenneth Ray Woods.

Joseph S. Mierzejewski, Bloomfield Hills, Mich., for defendants Tricil Environmental Management, Inc. and C.H. Billingsley, Jr.

L. Graham Ward, Bloomfield Hills, Mich., for defendant Ryder Truck Rental, Inc.

MEMORANDUM OPINION
AND ORDER

ZATKOFF, District Judge.

## I. INTRODUCTION

This is a negligence action arising out of a motor vehicle accident in Toledo, Ohio. Subject matter jurisdiction is based on diversity of citizenship and an amount in controversy exceeding $50,000, as plead in plaintiffs' complaint.

This matter is before the Court on defendant-Ryder Truck Rental, Inc.'s ("Ryder") Fed.R.Civ.P. 56(b) motion for summary judgment as to plaintiffs' claims of negligent entrustment and ownership liability. The following parties have filed briefs in response thereto: plaintiffs Thomas and Patricia Best ("the plaintiffs"); defendants Tricil Environmental Management, Inc. ("Tricil") and C. Billingsley ("Billingsley"); and Ray Woods ("Woods") and Gentilini Trucking Inc. ("Gentilini").[1] Pursuant to E.D.Mich.Local R. 17(*l*)(2), the Court addresses the motion without entertaining oral argument.

In addition to the substantive issues raised in Ryder's motion, the Court is presented with a threshold choice-of-law issue. The Court must determine whether the substantive law of Michigan or that of a foreign state applies to this case. For all of the reasons stated below, the Court (1) holds that Michigan law controls; (2) grants Ryder's motion for summary judgment on plaintiffs' claim of negligent entrustment; and (3) denies Ryder's motion for summary judgment on plaintiffs' claim of ownership liability.

## II. BACKGROUND

The motor vehicle accident giving rise to this suit occurred on October 19, 1990. While plaintiff-Thomas Best was travelling

---

[1] Although the motion for summary judgment only directly involves the rights and duties of plaintiffs and defendant-Ryder, the choice-of-law issue raised in the motion affects the rights of all the parties and prompted the submission of response briefs by parties not involved in the substantive matters raised in the motion. In the interest of justice and judicial economy, the Court accepted and considered all the response briefs filed. However, the Court did not consider plaintiffs' November 7, 1991 "supplemental brief" in support of its motion because the brief was filed without leave of court.

in the left lane of northbound Interstate 75 ("I–75") in Toledo, Ohio,[2] a truck (the "first truck") owned by defendant-Gentilini and driven by its employee, defendant-Woods, spun out of control on southbound I–75,[3] careened through the median, entered the northbound traffic lanes, and was struck by plaintiff–Best's vehicle, which became lodged under the first truck as a result of the collision.

A second truck was also allegedly involved in the accident. It was leased by defendant-Ryder to defendant-Tricil Environmental Management and driven by defendant-Billingsley. The second truck was travelling in the same direction as Best's vehicle (northbound on I–75) in the right lane and some distance behind Best's vehicle. As the collision between the first truck and Best's automobile was unfolding before him, Billingsley, the driver of the second truck, decided to put his truck into a "Jackknife" in order to bring it to a stop as quickly as possible. Tricil and Billingsley claim that their truck did not collide with Best's auto. Best argues that it did.[4]

Billingsley's driving qualifications were revealed in his uncontroverted deposition testimony. Billingsley has taken and passed numerous Interstate Commerce Commission ("ICC") tractor/trailer examinations. Billingsley has never been cited for a violation of ICC driving regulations. Furthermore, before Billingsley operated

the leased truck, Ryder required Billingsley to pass a written test, a road test, and a physical exam.[5]

Best allegedly suffered severe injuries as a result of the accident. Particularly, he alleges that he suffered permanent "brain injuries," as well as "other serious and permanent disabilities." He and his wife seek pecuniary relief.

With respect to Ryder, plaintiffs' complaint sets forth two claims. The first claim is for ownership liability, flowing from Ryder's alleged status as title holder and thus "owner" of the second truck at the time of the accident. The second claim is for negligent entrustment, flowing from Ryder's alleged failure to investigate the driving qualifications of its lessee's (i.e., Tricil's) employee (i.e., Billingsley).

## III. ANALYSIS

### A. Choice-of-Law

■ The choice-of-law arguments rely substantially on the parties' states of citizenship. The plaintiffs are both citizens of Michigan. Defendants are all citizens of foreign states: Gentilini is a citizen of Illinois, as was Woods at the time of the accident;[6] both Tricil and Billingsley are Tennessee citizens; Ryder is a citizen of Florida.[7] As indicated above, the accident occurred in Ohio.

---

2. Best was travelling in Ohio on business.

3. Defendants–Gentilini and Woods claim that icy road conditions existed that day and caused the truck to lose traction. Plaintiff–Best argues that the inclement weather presented only rain, and not snow or ice.

4. A Toledo Police Officer, who was at the scene of the accident but who admitted to the fact that he was not an accident reconstructionist, provided deposition testimony in which he concluded that the second truck did collide with Best's vehicle. His deposition testimony was based on his preparation of an accident report, and it is the only evidence produced to date on the issue of whether the second truck collided with Best's vehicle.

5. In their response brief, plaintiffs claim that Ryder's motion is premature because plaintiffs need additional time for investigation and discovery into Billingsley's driving qualifications.

The Federal Rules of Civil Procedure permit the Court to rely on such a claim to order submission of additional affidavits or to allow additional discovery before deciding a motion for summary judgment. Fed.R.Civ.P. 56(f). However, the claim or plea for additional discovery must be made in an affidavit under Rule 56(f). In this case, because plaintiffs asserted in their brief, as opposed to in an affidavit, that they needed additional time for discovery, Rule 56(f) is inapplicable and, thus, poses no barrier to the entry of summary judgment on the issue of consequential damages. The Court also notes that this case has been pending for over one year and has been the source of intense discovery.

6. Woods is now a resident and citizen of Texas.

7. Tricil actually leased the second truck from Ryder's Tennessee subsidiary.

Ryder contends that the *lex fori*, the law of the forum state—Michigan in this case, applies to this case. From Ryder's perspective, Michigan law presents an advantage because it contains an owner liability statute, which shifts owner liability from a lessor to a lessee who agrees to a lease term exceeding 30 days. Ryder argues that because its lessee (i.e., Tricil) agreed to a term exceeding 30 days, its lessee, not Ryder, was the "owner" of the second truck at the time of the accident.

Gentilini and Woods contend that the *lex loci delicti*, the law where the alleged tort occurred (i.e., Ohio) governs this case. They argue that their defense of improper road maintenance causes the state of Ohio to have an interest in applying its law to this case. They also impliedly argue that plaintiffs' reliance on Ohio law in the complaint estops plaintiffs from denying the application of Ohio law.

Plaintiffs have not clearly articulated their position on the choice-of-law issue. Their position appears to be somewhat multifarious. In their complaint, plaintiffs copiously cite Ohio law in support of their averments. In their brief in response to Ryder's motion for summary judgment, plaintiffs argue forcefully for the application of Tennessee law. Although in their response brief, plaintiffs also suggest that different issues in this case should be decided by applying the law of different states. The Court believes that plaintiffs favor Tennessee law, but to be sure, the Court shall scrutinize the possibility of applying the law of all foreign states implicated in this suit,[8] except Illinois.[9]

Tennessee law benefits plaintiffs because it lacks the sort of owner liability statute that Michigan has adopted. That is, in Tennessee, unlike Michigan, legal ownership of a vehicle and its attendant common law liability, do not shift to a lessee who agrees to a lease term of more than 30 days. In this regard, under Tennessee common law, the lessor of the vehicle remains liable despite the duration of the lease agreement. In this case, if the lease agreement between Ryder and Tricil was for a period in excess of 30 days, Ryder, as lessor, would be absolved of ownership and liability under Michigan law, but not Tennessee law.[10]

It is axiomatic that in diversity cases, a federal court must apply the choice-of-law rules of the state in which it sits. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In this case, because plaintiffs' action was brought in the United States District Court for the Eastern District of Michigan, Michigan choice-of-law rules apply. Michigan's choice-of-law rules have emerged in a series of judicial decisions discussed below.

Before 1982, Michigan courts deciding choice-of-law issues applied the *lex loci delicti*—the substantive law of the jurisdiction where the alleged wrong occurred. *Abendschein v. Farrell*, 382 Mich. 510, 170 N.W.2d 137 (1969). The *lex loci* ostensibly promoted predictability and certainty and discouraged forum shopping. However, in *Sexton v. Ryder*, 413 Mich. 406, 320 N.W.2d 843 (1982), the Michigan Supreme Court abandoned a strict *lex loci* approach and instead expressed through various plurality opinions a preference for applying the *lex fori*—the substantive law of the forum state. The various plurality opinions relied on differing rationales and employed different tests for determining the circumstances that gave rise to the application of the *lex fori* rule. As a result, state and federal courts experienced difficulty in applying *Sexton* in a consistent manner.

---

**8.** This Court is unaware of any Michigan or federal case in which the law applied was neither that of the forum state nor that of the state where the alleged tort occurred. The implication is that the only states with interests in having their law applied are the *lex loci* and the *lex fori*.

**9.** None of the parties have argued in favor of applying Illinois law. Even if they had, it is apparent that the state of Illinois has no interest in having its law apply to this case.

**10.** As mentioned below, Tennessee has enacted a statute defining "ownership," but the statute does not limit liability—it merely defines those "owners" who under Tennessee law must acquire motor vehicle insurance.

To resolve the confusion, the Michigan Supreme Court declared in *Olmstead v. Anderson*, 428 Mich. 1, 400 N.W.2d 292 (1987) that in tort cases, a presumption existed in favor of applying the substantive law of the forum state (i.e., Michigan) and that the presumption could be overcome only if there was a rational reason for displacing Michigan law. In essence, *Olmstead* finalized the departure from the previous rule of *lex loci delicti* to a more flexible rule of *lex fori*.[11]

*Sexton* and *Olmstead* have been analyzed in a recent Sixth Circuit case. In *Mahne v. Ford Motor Company*, 900 F.2d 83 (6th Cir.1990) (J. Ryan), a Florida resident brought a products liability action against Michigan products manufacturers to recover for injuries sustained in a Florida accident. Florida law included a statute of repose that would have barred the plaintiff's case. Michigan law contained no similar prohibition. Relying on *Sexton* and *Olmstead*, the *Mahne* court held that Michigan law—the *lex fori*—applied because no foreign jurisdiction presented a superior interest in having its law applied.

In *Mahne*, the Sixth Circuit set forth some principles for deciding Michigan choice-of-law issues. The *Mahne* court concluded that in Michigan, *lex fori* is the presumptive rule for choice-of-law issues in tort case, but that each issue had to be decided on a case-by-case basis. *Mahne*, 900 F.2d at 86. The court further found that the analysis should focus on whether a rational reason requires that foreign law supersede the law of the forum state, Michigan. *Id.* (citing *Olmstead*, 428 Mich. at 24, 400 N.W.2d 292). According to the *Mahne* court, "[t]o determine whether there is such a rational reason, a court's first duty is to examine the foreign state's interest, if any, in having its law apply." 900 F.2d at 87. If the foreign state does have an interest, a court's second duty is to determine whether "reason" requires that

the law of the foreign state displace that of the forum state. *Mahne*, 900 F.2d at 87. "If there is no reason to apply the foreign state's law, there is no need to undertake an analysis of Michigan's interest." *Id.* (citing *Olmstead*, 428 Mich. at 30, 400 N.W.2d 292).

The *Mahne* court added that (1) where none of the parties are citizens of the state where the alleged tort occurred, that state has no interest in the litigation unless the issues in the case involve conduct as opposed to compensation. *Mahne*, 900 F.2d at 87 (citing *Olmstead*, 428 Mich. at 29, 400 N.W.2d 292), and (2) where a foreign statute is designed to protect local interests, there is no reason to extend its benefits to a non-resident whose state has no similar statute. *Mahne*, 900 F.2d at 87 (citing *Olmstead*, 428 Mich. at 29, 400 N.W.2d 292).

### 1. Tennessee

■ The state of Tennessee does not have an interest in having its substantive law apply in this case.

Plaintiffs argue that Tennessee has an interest in applying its law to this case because it has defined "ownership" under its motor vehicle code. Tenn.Code.Ann. § 55–1–112. Section 55–1–112 reads:

(b) "Owner" means a person who holds the legal title of a vehicle, or in the event the vehicle is the subject of an agreement for the conditional sale or lease thereof with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee ... [and] such conditional vendee or lessee ... shall be deemed the owner for purposes of chapters 1–6 of this title.

Although it defines "owners," section 55–1–112 does not limit liability of those owners in common law negligence actions.[12] Therefore, section 55–1–112 does not repre-

---

11. None of the parties have argued that a strict *lex loci* or a strict *lex fori* approach is justified. Rather, it is clear that all the parties believe that the *Olmstead* interest-analysis approach should apply to the Court's resolution of the choice-of-law issue.

12. Plaintiffs also indicate that Tenn.Code Ann. § 55–12–102(11) provides the same definition of "owner" as § 55–1–112. Therefore, the analyses of both statutes are co-extensive.

sent an unequivocal regulation of conduct that in some instances may constitute a superseding state interest under *Olmstead.* Therefore, plaintiffs' claim fails.

Plaintiffs further contend that Tennessee has an interest in having its law apply to a Tennessee citizen (Billingsley) driving a vehicle (the second truck) licensed and registered in Tennessee, operated by a Tennessee citizen (Tricil), and leased pursuant to a contract executed in Tennessee. Plaintiffs' argument in support of applying Tennessee law cannot be harmonized with *Olmstead* as interpreted by *Mahne.* Just as the court in *Mahne* found that a Florida statute of repose for product liability cases was intended to protect Florida product manufacturers, it is presumed in this case that Tennessee's maintenance of broad common law concepts of ownership and liability were meant to protect Tennessee citizens or plaintiffs suing in Tennessee courts. It challenges common sense to suggest, as plaintiffs do, that the state of Tennessee intended to provide a legal benefit to a Michigan plaintiff involved in an Ohio accident with a vehicle licensed and registered in Tennessee.[13] If the law of foreign jurisdictions supplied such an indirect but significant legal benefit, *Olmstead*'s *lex fori* presumption would be rendered meaningless.[14] Thus, to avoid an evisceration of *Mahne* and *Olmstead,* plaintiffs' argument in favor of Tennessee law is rejected.

Last, plaintiffs argue that because the lease agreement between Ryder and Tricil was executed in Tennessee and because the construction of the lease agreement affects the ownership and liability issues, Tennessee has an interest in applying its law to all aspects of this case, or at a minimum to the issue of ownership. Under *Mahne,* the mere existence of a Tennessee lease does not represent an attempt on the part of Tennessee to regulate the conduct at issue in this case (i.e., the operation of motor vehicles). Accordingly, plaintiffs' arguments fail.

### 2. Ohio

■ Defendants Woods and Gentilini have argued that the law of the state where the alleged tort occurred (i.e., the law of Ohio) should apply in this case. Where no party is a citizen of the state where the alleged tort occurred, that state has no interest in the litigation, unless the issue in the case involves conduct (as opposed to compensation) that is regulated by the state. *Mahne,* 900 F.2d at 87 (citing *Olmstead,* 428 Mich. at 29, 400 N.W.2d 292).

Pursuant to *Mahne,* the Court concludes that Ohio does not have an interest in this litigation. None of the parties involved in this case are Ohio citizens. Also, Woods and Gentilini have not cited any Ohio law indicating that Ohio has sought to regulate conduct at issue in this case. Accordingly, under *Mahne,* Woods and Gentilini's argument fails.

■ Woods and Gentilini have suggested that because plaintiffs have cited Ohio law in their complaint, plaintiffs are somehow estopped from denying the application of Ohio law. Woods and Gentilini have not shown that any party has been prejudiced by plaintiffs' citations to Ohio law in the complaint. Additionally, Woods and Gentilini have cited no authority to support an estoppel argument. In the interest of justice, the Court concludes that plaintiffs are not estopped from denying the application of Ohio law in this case.

■ Additionally, Woods and Gentilini have argued that their defense in this case involves a claim that the State of Ohio improperly maintained its roadway medians, and that this claim bodes in favor of applying Ohio law. The physical features

---

**13.** The Court's conclusion is supported by the *Mahne* court's observation that "where [a] statute is designed to protect local interests, there is no reason to extend its benefits to a nonresident whose state has no similar statute." *Mahne,* 900 F.2d at 87 (citing *Olmstead,* 428 Mich. at 29, 400 N.W.2d 292).

**14.** After examining the relevant and binding precedent, the Court is persuaded that interest of the foreign state must be manifested by more than a mere routine registration and licensing requirement of a foreign state.

of the alleged accident scene are relevant, but, as stated in *Sexton, Olmstead,* and *Mahne,* the situs alone cannot implicate a foreign state's interest, unless the foreign state has regulated conduct at issue in the case. Woods and Gentilini's anticipated road safety defense does not evidence an attempt on the part of Ohio to regulate specific conduct at issue in this case.

### 3. Michigan

■ Because no foreign state has an interest in having its law apply to this case, it is not necessary to undertake an analysis of Michigan's interest. *See Mahne,* 900 F.2d at 87 (citing *Olmstead,* 428 Mich. at 30, 400 N.W.2d 292). The parties have failed to rebut the presumption of applying the *lex fori.* Accordingly, the Court concludes that Michigan substantive law applies to all tort issues in this case.

### B. Ryder's Motion for Summary Judgment

Ryder's motion for summary judgment relies on Fed.R.Civ.P. 56. Under Rule 56, summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *Blakeman v. Mead Containers,* 779 F.2d 1146 (6th Cir.1985); Fed.R.Civ.P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *United States v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Cook v.*

*Providence Hosp.,* 820 F.2d 176, 179 (6th Cir.1987); *Smith v. Hudson,* 600 F.2d 60 (6th Cir.1979), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). In deciding a motion for summary judgment, the Court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12. Although summary judgment is disfavored, this motion may be granted when the trial would merely result in delay and unneeded expense. *Poller v. Columbia Broadcasting Systems, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *A.I. Root Co. v. Computer/ Dynamics, Inc.,* 806 F.2d 673, 675 (6th Cir.1986). Where the non-moving party has failed to present evidence on an essential element of its case, it has failed to meet its burden and all other factual disputes are irrelevant; thus, summary judgment is appropriate. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ("[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)).

### 1. Negligent Entrustment

■ In their complaint, Plaintiffs allege that Billingsley did not possess the necessary "skill, competence and maturity to operate a semi-trailer with due care and caution and that Ryder failed to take necessary action to ascertain or determine the driving records of the agents of its lessee." In its motion for summary judgment, Ryder argues that because Billingsley was qualified to operate the second (leased) truck, Ryder is not liable for negligent entrustment. Ryder further alleges that plaintiffs do not possess any evidence whatsoever that Billingsley was unqualified, that Ryder neglected to investigate Billingsley's qualifications, or that Ryder had special knowledge that Billingsley

presented an unreasonable risk to the safety of others.

■ To prevail under a theory of negligent entrustment, a plaintiff must establish that the defendant knew or should have known of the unreasonable risk propensities of the entrustee. *Moning v. Alfono,* 400 Mich. 425, 254 N.W.2d 759 (1977). As stated in *Fredericks v. General Motors Corp.,* 411 Mich. 712, 727, 311 N.W.2d 725 (1981),

> [t]o prove an entrustor should have known an entrustee was likely to use an entrusted chattel in an unsafe manner, peculiarities of the entrustee sufficient to put the entrustor on notice of that likelihood must be demonstrated.

Ryder has submitted deposition testimony to support its claim that it did not negligently entrust the leased vehicle to Billingsley. According to Billingsley's deposition testimony, he passed numerous ICC examinations and was thoroughly tested by Ryder before he was allowed to operate the leased vehicle. Furthermore, Billingsley had never been cited for violating ICC regulations. Ryder's exhibits establish that it had no knowledge, actual or constructive, of any unreasonable risk propensities of Billingsley.

Plaintiffs have failed to contradict Billingsley's deposition testimony. In fact, plaintiffs have stated in their answers to Ryder's interrogatories that they have no information to support their negligent entrustment claim against Ryder. Therefore, it is clear to the Court that plaintiffs are incapable of establishing the essential elements of their negligent entrustment claim.

As noted above, when a non-movant fails to rebut the movant's proofs and cannot establish the essential elements of its claim, summary judgment must be entered. For the reasons stated above, with respect to plaintiffs' claim against Ryder for negligent entrustment, the Court holds that there exists no genuine issue of material fact and that Ryder is entitled to judgment as a matter of law.[15]

**2. Ownership Liability**

[9] Plaintiffs allege that as lessor and owner of the second vehicle, Ryder is liable under common law for the injuries suffered by plaintiffs. Ryder claims that under Michigan's owner liability statutes, it was not the owner of the leased vehicle at the time of the accident, and therefore bears no responsibility for plaintiffs injuries.

In Michigan, if the term of a lease agreement exceeds 30 days, the lessee is deemed the "owner" of the leased vehicle. M.C.L.A. §§ 257.37 and 257.401. Section 257.37 defines an "owner" as

> [a]ny person firm, association, or corporation renting a motor vehicle or having the exclusive use thereof, under a lease or otherwise, for a period that is greater than 30 days....

Section 257.401 defines liability:

> A person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle pursuant to a lease providing for the use of the motor vehicle by a lessee for a period that is greater than 30 days shall not be liable at common law for damages or injuries to either person or property resulting from the operation of the leased motor vehicle.

Pursuant to M.C.L.A. §§ 257.37 and 257.401, Ryder contends that it was not the owner of the vehicle (i.e., the second truck) leased to Tricil and is not liable under common law for personal injuries incurred in the motor vehicle accident at issue. In support of its claim, Ryder submitted a lease agreement that it claims provided the terms of the lease between it and Tricil. Although not specifically stating the term of the lease, the agreement indicates that any party may terminate it with 60 days notice. The 60 day notice provision necessarily implies, and the Court hereby holds, that the lease agreement submitted by Ryder was for a term in excess of 30 days. However, as noted by plaintiffs, the problem with the lease agreement is that it does not on its face indicate that it was executed by Ryder and Tricil; rather, the agreement

---

**15.** Much time has passed and plaintiffs have not    filed any affidavits in support of their claims.

**368**

lists "Underwood Industries, Inc." as the lessee. Therefore, the Court is unable to conclude that the lease agreement for a term exceeding 60 days and submitted by Ryder was in fact the lease agreement involved in this case. Furthermore, there is nothing in the lease to indicate that the vehicle involved in the accident was, in fact, the subject of that lease. Accordingly, with respect to plaintiffs' claim of ownership liability against Ryder, the Court concludes that genuine issues of material fact exist as to the existence and terms of the lease agreement between Ryder and Tricil. The Court is, therefore, unable to determine whether under Michigan's owner liability statutes, common law liability remained with the lessor-Ryder or shifted to the lessee-Tricil.

### IV. CONCLUSION

For all of the foregoing reasons, the Court holds (1) that the substantive law of Michigan applies to this diversity action, (2) regarding plaintiffs' claim of negligent entrustment, that no genuine issue of material facts exists and defendant-Ryder is entitled to judgment as a matter of law, and (3) regarding plaintiffs' claim against Ryder for ownership liability, that genuine issues of material fact exist precluding entry of judgment.

Accordingly, defendant-Ryder's motion for summary judgment is GRANTED as to plaintiffs' claim for negligent entrustment, but DENIED as to plaintiff's claim for ownership liability.

IT IS SO ORDERED.