Fay BRAVER and Joseph
Braver, Plaintiffs,

v.

SEABOURN CRUISE LINE, INC., and
K/S Seabourn Cruise Line or Seabourn
Cruise Line A/S, Defendants.

No. 90–72169.

United States District Court,
E.D. Michigan, S.D.

Dec. 18, 1992.

**1312**

Thomas W. Emery, Peter B. Worden, Detroit, MI, for plaintiffs.

Michael J. Liddane, Foster Meadows, Detroit, MI, for defendant.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

On July 13, 1992, defendants filed a motion for summary "disposition" with this court. Plaintiffs filed a response July 30, 1992. Defendants filed a reply August 13, 1992. On August 14, 1992, this court entered an order dismissing defendants' motion without prejudice for failure of both parties to brief the issue of choice of law.

On September 14, 1992, defendants resubmitted their motion for summary judgment and attached a brief arguing that Swedish law applies in this case. Plaintiffs filed a response October 1, 1992, arguing that United States maritime law should apply or, in the alternative, Michigan law should apply.

### I. Facts

The parties have no dispute as to the relevant facts surrounding this case. On August 3, 1989, plaintiffs were passengers on defendants' cruise ship. On the morning of August 3, 1989, plaintiffs disembarked from the cruise ship in Stockholm, Sweden, for the purpose of sightseeing. Plaintiffs had exited the gangplank area and were attempting to leave the pier at which the cruise ship was docked. In order to enter the street, other passengers, including plaintiff Joseph Braver and plaintiffs' friends, stepped over a chain link fence dividing the pier from the street. The chain link fence was erected by a nonparty to this action, presumably the City of Stockholm or the owner of the pier.

Plaintiff Fay Braver saw the fence prior to attempting to cross it and estimated that she could safely step over it. However, plaintiff Fay Braver alleges that in stepping over the fence she caught her right leg on the fence and fell to the ground, breaking her right ankle in the process. Defendants allege that there was an opening in the fence through which plaintiff Fay Braver might have safely passed approximately five yards from where plaintiff attempted to cross the fence. Plaintiffs do not claim that no opening existed, only that they saw no opening in the fence from where they were and assumed that no opening was nearby.

Plaintiffs filed suit in this court claiming negligence on the part of defendants. Defendants now move for summary judgment.

### II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the non-

movant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed. R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## III. Analysis

Because the alleged tort occurred on foreign soil, that is, on a pier in Stockholm, Sweden, the first legal issue necessary to a decision in this case is the choice of applicable law. The remaining issue then is whether there exist genuine issues of material fact as to whether defendants are liable for plaintiff's injuries under a theory of negligence. Defendants allege that they owed no duty to plaintiffs because the incident did not occur on cruise ship but rather on the property of a non-party to this action.

Defendants further deny liability on the ground that plaintiff Fay Braver admits to having seen the fence prior to attempting to cross it, and therefore the accident occurred solely as a result of plaintiff's own choice of action. Thus, even if defendants were found to have owed a duty to plaintiff Fay Braver, there was no breach of the duty to plaintiff and no causation as to her injury that would support a finding of liability for her injury.

Plaintiffs contend that maritime law should apply in this case because the fence was appurtenant to the cruise ship, and therefore liability for injury resulting from such appurtenance is covered by the law of the seas which, *inter alia*, governs the relationship between a maritime carrier and its passengers. Plaintiffs contend that in the event the court finds that maritime law does not apply, Michigan law should apply, and that, under Michigan law, defendants should be held liable to plaintiffs under a theory of negligence.

### A. Choice of Law

It first is necessary to determine whether maritime law or the law of a state is applicable in this case. The maritime

tort jurisdiction of federal courts is determined by the locality of the accident. *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 205, 92 S.Ct. 418, 421, 30 L.Ed.2d 383 (1971). Personal injuries on land are covered, for the most part, by state substantive law, while such injuries on navigable waters are generally governed by federal maritime law. *Id.* at 213, 92 S.Ct. at 426. Piers and docks have been consistently deemed extensions of land. *Id.* at 206–207, 92 S.Ct. at 422. The gangplank has served as a rough dividing line between the state and maritime jurisdictions. *Id.*

■ The accident in the case at hand occurred on the pier while plaintiff Fay Braver was attempting to cross a chain link fence dividing the pier from the city street. Plaintiff concedes that the accident occurred beyond the gangplank line.[1] Plaintiff's response to defendants' resubmission of motion for summary judgment at 4. Thus, state law and not maritime law governs the outcome of this case.

■ The next question is which state's law applies: the law of the Swedish state in which the accident occurred or the law of Michigan, the forum of this legal action. When jurisdiction is based on diversity of citizenship, as it is in this case, a federal court must apply the choice of law rules of the state in which it sits. *Mahne v. Ford Motor Co.*, 900 F.2d 83, 85 (6th Cir.1990). Thus, the choice of law rules of Michigan govern in this case.

■ Michigan adopts the rule of *lex fori;* that is, the rule that the law of the forum is presumed to apply unless there is a rational reason why foreign law should supersede the law of the forum state. *Id.* at 86, *citing Olmstead v. Anderson*, 428 Mich. 1, 24, 400 N.W.2d 292 (1987). The choice of law issue must be decided on a case-by-case basis. *Id.* To determine whether there is a rational reason to supersede the law of the forum, a court's first duty is to examine the foreign state's interest, if any, in having its law applied. *Id.* at 87. Where no party is a citizen of the state where the alleged tort occurred, that state has no interest in the litigation unless the issue in the case involves conduct (as opposed to compensation) that is regulated by the state. *Best v. Dante Gentilini Trucking, Inc.*, 778 F.Supp. 360, 365 (E.D.Mich. 1991). Pursuant to *Mahne* and *Best*, this court concludes that Sweden has no interest in this litigation. *Mahne*, 900 F.2d at 88 (Florida held to have no interest in outcome of litigation of tort occurring in Florida). *Best*, 778 F.Supp. at 365 (Ohio held to have no interest in outcome of litigation of tort occurring in Ohio). Thus, Michigan law governs the outcome of this case because it is the law of the forum state and because there exists no rational reason why the law of Sweden should be applied.

### B. Plaintiff's Case Under Michigan Law [2]

■ The issue in this case is whether there exists a genuine issue of material

---

**1.** Plaintiffs also argue, however, that law relating to the doctrine of seaworthiness is relevant to proving defendants' negligence. Plaintiffs cite *Complaint of Compagnie Generale Transatlantique, Plaintiff, as owner of the S.S. Antilles*, 392 F.Supp. 973 (P.R.D.Ct.1975) for the proposition that any failure to provide a seaworthy vessel could be considered in determining whether a vessel owner had conformed to the standard of care owed to passengers. Plaintiffs then cite a legal test for determining whether the vessel is seaworthy, the first element of which is a showing by plaintiff that he is entitled to a warranty of seaworthiness. The parties in this case do not dispute that ship passengers, invitees and guests are not entitled to a warranty of seaworthiness. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 629, 79 S.Ct. 406, 409, 3 L.Ed.2d 550 (1959). Thus, even if plaintiffs wished to use the war-

ranty of seaworthiness not as the basis for liability but as the basis for a showing of negligence, plaintiffs could not prove this element.

**2.** Plaintiffs' claim also would fail under Swedish maritime law or United States maritime law. Plaintiffs point the court to four sections of the Swedish Maritime Code which plaintiffs argue are relevant to their claim: Section 175 provides, *inter alia*, that "[t]he carrier shall ... look after the interests of the passenger;" section 188 provides that "[t]he carrier shall be liable for any loss arising from the passenger having suffered personal injury or having died in the course as a result of any event in the course of carriage, ... if the loss was caused *by neglect or default* on the part of the carrier or any person for whom he is responsible." (emphasis added). The Swedish Maritime Code (in English with Swedish parallel text), published by the Gothen-

fact as to plaintiffs' case in negligence. Plaintiffs' negligence action rests upon the issue of whether defendants, as owners and operators of the cruise ship, breached a duty owed to plaintiffs to protect them from the dangers of stepping over a chain link fence in the course of exiting the pier to which the ship was docked.

 A company operating a passenger ship has the duty in landing its passengers to indicate to them the proper way to the street and to see that such way is reasonably safe. *Anda v. Duluth & Georgian Bay Transit Co.*, 231 Mich. 567, 570, 204 N.W. 761 (1925). In the absence of direction from the ship's company as to the proper way to proceed, a passenger has the right to use any path or way which reasonably appears to be designed and used as a way to the public street. *Id.* In conveying passengers through station facilities and approaches to the ship, ship owners and operators are required to use ordinary care in view of the dangers reasonably to be apprehended. *Id.* at 571, 204 N.W. 761.

Plaintiffs provided defendants with a photograph of plaintiff Fay Braver taken as she lay on the ground just after falling and breaking her ankle. Ex. C to defendants' original motion for summary judgment. Pursuant to filing a report of plaintiff Fay Braver's accident, defendants' agent also took photographs of the scene. Ex. B to defendants' original motion for summary judgment. From these photo-

graphs of the locale of the accident, it is evident that the ship was docked only ten or twelve yards from the edge of the city street and from the chain link fence which separated the pier from the street. It also appears from plaintiffs' photograph that approximately four yards from where plaintiff attempted to step over the chain link fence, there is a break in the fence where a pedestrian could have crossed safely to the street without having to step over the fence.[3]

It is undisputed that defendants, at the time of the accident, were not providing passengers with direction to the street. Thus, the question in this case is whether plaintiffs chose a path which reasonably appeared to be designed and used as a way to the public street.

It is clear from the plaintiffs' own photograph of plaintiff Fay Braver lying on the ground just after her fall, that the path to the street that plaintiff chose to take, that is, stepping over this fence, could in no way have reasonably appeared to plaintiff to have been designed and used as a way to the public street. In fact, in her deposition testimony, plaintiff makes statements to the effect that normally when she encounters a barrier such as this chain link fence, she would not attempt to cross it. Ex. D to defendants' original motion for summary judgment at 28–29. However, she testified that in this instance, she had estimated that the height of the fence was such that she, a

burg Maritime Law Association, pp. 77, 81. The court finds that the facts as alleged by plaintiff do not present a genuine issue of material fact as to neglect or default on the part of defendant.

Furthermore, section 201 of the Swedish Maritime Code provides that "[t]he carrier may exempt himself from his liability in relation to a passenger with respect to the time before embarkation and after disembarkation." *Id.* at 81. Defendants provided the court with a copy of the "Terms and Conditions of Passage Ticket Contract" appearing on plaintiffs' tickets which specifically states that "[t]he carrier shall in no event be liable to the passenger in respect of occurrences taking place outside the vessel or property or launches owned or operated by the carrier." Ex. B to Defendant's Reply (Resubmission). Thus, even if neglect could be found on the part of defendant, Swedish law permits defendant shipowners' and operators' to exempt themselves from liability for such neglect.

Under United States Maritime Law, it is a well settled principle that the duty owed by the shipowner to those lawfully aboard the vessel who are not members of the crew is that of exercising reasonable care. The court finds that the facts as alleged by plaintiffs do not demonstrate a genuine issue of material fact as to whether defendant failed to exercise reasonable care towards plaintiff Fay Braverman.

3. Even if there had been no break in the fence, the court finds that no reasonable trier of fact could find that plaintiff Fay Braver reasonably believed the way out of the area was by stepping over a fence several inches in height into a busy city street. Furthermore, there is no evidence that plaintiff expended any effort searching for a more suitable way out which might support a finding that plaintiff reasonably believed the route over the fence to be the proper way out of the area.

five-foot tall woman, could safely step over it. *Id.* Her testimony shows that regardless of whether her judgment that she could clear the fence was reasonable, she did not have a reasonable belief that the path she chose had been designed for use as a thoroughfare. Thus, there is no genuine issue of material fact as to whether defendants can be held liable for plaintiff's fall. Under the law of Michigan, plaintiffs' negligence action against defendants must fail.

### ORDER

Therefore, it is hereby ORDERED that defendants' motion for summary judgment is GRANTED.

SO ORDERED.